# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

CLARENCE W. LEWIS, JR.

|  |  |
|---|---|
| **Debtor 1** | **Chapter:** 13 |
|  | **Case No.:** 5-19-bk-01873 RNO |
| CLARENCE W. LEWIS, JR. | **Adversary No.:** 5-19-ap-00116 RNO |
| **Plaintiff(s)** | **Document No.:** 44 |
| vs. |  |
| THE MONEY SOURCE, INC. | **Nature of Proceeding:** **Motion to Dismiss Adversary Proceeding** |
| **Defendant(s)** |  |

## OPINION[1]

A Motion to Dismiss the Debtor/Plaintiff's Second Amended Complaint was filed. Count 1 of the Second Amended Complaint alleges that the Defendant violated the Real Estate Settlement Procedures Act. Count 2 alleges it violated the Truth-in-Lending Act. The Motion to Dismiss will be granted in part and denied in part.

**I.  JURISDICTION**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**II.  FACTS AND PROCEDURAL HISTORY**

Clarence William Lewis, Jr. filed a Chapter 13 Petition on April 30, 2019. The First Amended Plan ("Plan") was confirmed on July 24, 2019. 5-19-bk-01873 RNO, Order Confirming Plan, ECF No. 38. The Plan provides that all post-petition assets will vest in the Debtor upon the entry of a Chapter 13 discharge. 5-19-bk-01873 RNO, Plan, ECF No. 34. This

---

[1]  Drafted with the assistance of Chelsea L. Hollenstein, Law Clerk.

1

Adversary Proceeding was commenced on November 26, 2019. 5-19-ap-00116 RNO, ECF No. 1.

The original Complaint filed by Clarence William Lewis, Jr. ("Debtor") contains forty numbered paragraphs. It contains two counts and names a single Defendant, The Money Source, Inc. ("Defendant"). Count 1 of the original Complaint alleges the Defendant violated the Real Estate Settlement Procedures Act ("RESPA"). Count 2 alleges the Defendant violated the Truth-in-Lending Act ("TILA").

A First Amended Complaint was filed on January 23, 2020. 5-19-ap-00116 RNO, ECF No. 9. Thereafter, on May 20, 2020, on Motion, an Order was entered granting the Debtor leave to file a Second Amended Complaint. 5-19-ap-00116 RNO, ECF No. 41.

The Second Amended Complaint ("Complaint") was filed on May 20, 2020. On June 3, 2020, the Defendant filed a Motion to Dismiss ("Motion"). 5-19-ap-00116 RNO, ECF No. 44. The Motion has been briefed and oral argument was heard on August 27, 2020.

### III. DISCUSSION

#### A. Federal Rule of Bankruptcy Procedure 7012(b)(6) Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) ("F.R.B.P.") makes Federal Rule of Civil Procedure 12(b)-(i) ("F.R.C.P.") applicable to bankruptcy adversary proceedings. F.R.C.P. 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). However, the Supreme Court heightened this pleading standard by holding that for a complaint to withstand a motion to dismiss, a claim must be more than possible, it must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Additionally, *Twombly* advises that while detailed factual allegations are not required in a complaint, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

Two years later, the Supreme Court gave further guidance as to the meaning of "facial plausibility." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

At the motion to dismiss stage, only well pled facts are viewed in the light most favorable to the non-moving party, in this case, the Debtor. *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 291 (3d Cir. 1988). Alternatively, legal conclusions are not assumed to be correct at the motion to dismiss stage. In *Iqbal*, Justice Kennedy wrote:

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

The Third Circuit has also provided guidance on the differing standards regarding a complaint's alleged facts and legal conclusions at the motion to dismiss stage:

> The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such entitlement with its facts.

3

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

When deciding a motion to dismiss, the court may consider the complaint as well as attached exhibits and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, the court may consider an indisputably authentic document which a defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document. *Levins v. Healthcare Revenue Recovery Group LLC*, 902 F.3d 274, 279 (3d Cir. 2018); *Miller v. Clinton Cty.*, 544 F.3d 542, 550 (3d Cir. 2008).

The Federal Rules of Evidence ("F.R.E.") apply to proceedings before United States Bankruptcy Judges. F.R.E. 1101(a); *In re Barnes*, 266 B.R. 397, 403 (8th Cir. BAP 2001). F.R.E. 201 allows a federal court to take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket events in a case, contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa., Jan. 11, 1991).

    B.    **Count 1 and the Real Estate Settlement Procedures Act**

        1.    **Request for information**

The Real Estate Settlement Procedures Act ("RESPA") is codified at 12 U.S.C. § 2601, et seq. RESPA prohibits the provision or acceptance of any fee or kickback for referrals related to settlement of a federally related mortgage loan. 12 U.S.C. § 2607(a). RESPA also prohibits fee splitting in connection with a federally related mortgage loan, other than for services actually performed. 12 U.S.C. § 2607(b). This subsection was intended to prohibit the receipt of value for the referral of covered real estate settlement business. *Welch v. Centex Home Equity Co., LLC*, 262 F.Supp.2d 1263, 1269 (D. Kan. 2003). A "federally related mortgage loan" is defined by the

4

Case 5:19-ap-00116-RNO   Doc 55   Filed 10/28/20   Entered 10/28/20 14:07:55   Desc
Main Document    Page 4 of 13

terms of RESPA. 12 U.S.C. § 2602(1); *In re Knowles*, 442 B.R. 150, 157-58 (1st Cir. BAP 2011).

RESPA was also enacted to allow home buyers more access to information concerning their mortgages in order to protect them from fraudulent or deceptive practices by loan servicers. *Tichy v. Reinhart*, 2020 WL 3547518 at *4 (M.D. Pa., June 30, 2020); *Wotanis v. PNC Bank, N.A.*, 2019 WL 4054880 at *3 (M.D. Pa., Aug. 28, 2019).

The Complaint alleges that the Defendant, in 2014, originated a residential mortgage loan to the Debtor. 5-19-ap-00116 RNO, ECF No. 42, ¶ 6. The Complaint also alleges that the loan is "a federally related mortgage loan". 5-19-ap-00116 RNO, ECF No. 42, ¶ 32.

Central to both counts of the Complaint are two letters dated August 6, 2019 ("August 6 Letter") and September 27, 2019 ("September 27 Letter") (collectively, the "Letters"). The Letters were addressed to the Defendant by Debtor's attorney. The Complaint alleges that each letter constituted a "qualified written request" ("QWR") under RESPA. 5-19-ap-00116 RNO, ECF No. 42, ¶ 36. It is further alleged that each of the Letters constituted a "request for information" ("RFI") under Regulation X, the implementing regulations for RESPA. *In re Coppola*, 596 B.R. 140, 151-52 (Bankr. D.N.J. 2018).

Copies of the Letters are attached as Exhibit A to the Complaint. The August 6 Letter refers to a July 3, 2019, Notice of Postpetition Mortgage Fees, Expenses and Charges ("3002.1 Notice"). Judicial notice is taken that the 3002.1 Notice was filed to the Chapter 13 case claim register. The 3002.1 Notice is docketed to the Defendant's Proof of Claim Number 7-1. It is also noted that the 3002.1 Notice was withdrawn on October 7, 2019. The August 6 Letter characterizes certain fees in the 3002.1 Notice as "unreasonably large". The August 6 Letter requested details concerning the charges, such as when the work was performed, the names of any professional who performed the work, and the amount of time expended. The text of the Letters is essentially identical; the August 6 Letter does indicate that it was sent via certified

5

mail, return receipt requested. The September 27 Letter does not specify the manner in which it was sent. Generally, Count 1 of the Complaint alleges that the Defendant failed to timely respond to the Letters. 5-19-ap-00116 RNO, ECF No. 42, ¶ 44-45. Under RESPA, a servicer must, not later than thirty days after receipt of a QWR, take certain action. 12 U.S.C. § 2605(e)(2); *Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 363 (E.D. Pa. 2013). First, the servicer may correct any errors in the borrower's account, providing written notice of the correction. 12 U.S.C. § 2605(e)(1)-(2). Second, the servicer may investigate the matter and provide the borrower with a written explanation or clarification of why the requested information is unavailable or cannot be obtained by the servicer. 12 U.S.C. § 2605(e)(2).

A QWR may be made by the borrower or his agent. 12 U.S.C. § 2605(e)(1)(A); *In re Payne*, 387 B.R. 614, 633 (Bankr. D. Kan. 2008); *In re Hopkins*, 372 B.R. 734, 746 (Bankr. E.D. Pa. 2007).

The Motion maintains that the Complaint fails to state a claim for relief under RESPA. 5-19-ap-00116 RNO, ECF No. 44, ¶ 16. More specifically, the Motion alleges that the Letters are not QWRs. It further alleges a failure to adequately plead a right to actual damages. The Motion also avers the lack of a sufficient basis for the award of statutory damages.

The Debtor, contrastingly, argues that the Letters are either QWRs, or RFIs. He also argues actual damages have been pled with adequate sufficiency, and a plausible pattern or practice has been alleged to support a claim for statutory damages under RESPA.

The Court finds that the Letters do not qualify as QWRs because they do not relate to the servicing of the subject loan. Regulation X defines "servicing" as:

> receiving any scheduled periodic payments from a borrower
> pursuant to the terms of any federally related mortgage loan,
> including amounts for escrow accounts under section 10 of RESPA
> (12 U.S.C. § 2609), and making the payments to the owner of the
> loan or other third parties of principal and interest and such other
> payments with respect to the amounts received from the borrower
> as may be required pursuant to the terms of the mortgage servicing
> loan documents or servicing contract. In the case of a home equity

6

conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower.

12 C.F.R. § 1024.2(b).

Neither of the Letters address loan or escrow payments. Decisions which have found a letter to constitute a QWR are based upon quite different facts. *See In re Julien*, 488 B.R. 502, 508 (Bankr. D. Mass. 2013) (letter made a detailed request for information, including the interest rate, scheduled payments, how payments are applied to the account, account balances, and additional expenses); *Herrera v. Central Loan Admin. & Reporting*, 2017 WL 4548268 at *2 (D.N.J., Oct. 12, 2017) (three-page letter stated account contained errors and requested servicing file, identity of several parties, the amount need to reinstate the loan, etc.). The Motion is granted as to this portion of the Complaint. More specifically, the Letters are not QWRs.

Leave to amend will be granted. Because of the stage of the proceedings, the lack of prejudice, and without an indication that any amendment would necessarily be futile, allowing a final amended complaint is appropriate. *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004); *Luciani v. City of Phila.*, 643 Fed. Appx. 109, 111 (3d Cir. 2016).

This does not complete our inquiry because the Complaint also alleges that the Letters are RFIs and, thus, still subject to RESPA. 5-19-ap-00116 RNO, ECF No. 42, ¶ 37. Regulation X addresses RFIs:

> (a) Information request. A servicer shall comply with the requirements of this section for any *written request for information* from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information. A request for a payoff balance need not be treated by the servicer as a request for information. A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

7

12 C.F.R. § 1024.36 (emphasis added).

RFIs are not limited to requests which relate to loan servicing. *Tanasi v. CitiMortgage, Inc.*, 257 F.Supp.3d 232, 266 (D. Conn. 2017) (an RFI does not need to relate to "servicing"); *Pollack v. Seterus, Inc.*, 2017 WL 6343676 at *2-3 (S.D. Fla., Dec. 11, 2017) (a Regulation X request for information is not limited to a request concerning loan servicing).

The above leads to the conclusion that the Letters are RFIs covered by the provisions of Regulation X. The Debtor has pled a plausible claim in this regard. The Motion is denied as to this portion of Count 1.

### 2. Actual damages

A number of decisions stress that damages for a RESPA information request violation must be for damages suffered after the request was sent to the servicer. *See Giordano v. MGC Mortg., Inc.*, 160 F.Supp.3d 778, 782 (D.N.J. 2016) (costs incurred in preparing an informational request are not actual damages since RESPA requires damages to have been suffered after a statutory violation); *Grembowiec v. Select Portfolio Servicing, Inc.*, 2019 WL 3183588 at *6 (D.N.J., July 16, 2019) (costs of plaintiff's actions before a RESPA violation will not be considered actual damages); *Vilkofsky v. Specialized Loan Servicing, LLC*, 2017 WL 2573874 at *3 (W.D. Pa., June 14, 2017) (actual damages under RESPA result from a failure to comply with the statute).

A general maxim is that damages need not be proved with mathematical certainty. *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). Still, they should be proved with reasonable certainty. *Id*.

The Letters are dated August 6, 2019, and September 27, 2019. It is clear that more than thirty days elapsed between the Defendant's receipt of the August 6 Letter and the sending of the September 27 Letter by Debtor's counsel. The Complaint alleges that:

> Defendant's refusal to provide the information requested in the
> August Letter necessitated the preparation and sending of the
> September letter, and has therefore caused Plaintiff to incur
> attorney's fees in attempting to obtain the information from the
> Defendant.

5-19-ap-00116 RNO, ECF No. 42, ¶ 58.

At this stage, allegations are viewed in the light most favorable to the Debtor. The Complaint has effectively pled the Debtor suffered damages which were proximately caused by the Defendant's alleged RESPA violations. *See Block v. Seneca Mortg. Servicing*, 221 F.Supp.3d 559, 592 (D.N.J. 2016). The Defendant can surely test the extent of the Debtor's alleged damages through the discovery process.

A plausible claim for actual damages has been pled and the Motion is denied in this regard.

### 3. Statutory damages

RESPA provides for statutory damages in limited circumstances. An individual borrower may recover damages beyond actual damages for:

> any additional damages, as the court may allow, in the case of a
> pattern or practice of noncompliance with the requirements of this
> section, in an amount not greater than $2,000 for each member of
> the class, except that the total amount of damages under this
> subsection *in any class action . . .*

12 U.S.C. § 2605(f)(2)(B) (emphasis added).

On its face, this provision only applies to class actions. This Adversary Proceeding is clearly not a class action. However, the Motion does not address this aspect of the case.

The Complaint does allege that four other unnamed consumers have complained about the Defendant's failure to comply with informational requests made under RESPA. Also, a general reference is made to litigation, before an unnamed tribunal, in which former employees have alleged, ". . . that Defendant does not comply with CFPB regulations regarding TILA-RESPA disclosure requirements." 5-19-ap-00116 RNO, ECF No. 42, ¶ 52.

9

At least two Courts of Appeals have found that "pattern or practice" in this context is not satisfied by multiple alleged violations which only concern the plaintiff. Rather, allegations that the Defendant also violated RESPA regarding loans to other borrowers are required. *Compare Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016), *and Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013), *with Kapsis v. American Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 445 (E.D.N.Y. 2013) (two violations of RESPA insufficient to support a claim for statutory damages).

The Complaint contains enough specificity and context to advance the claim for statutory damages from the realm of the merely possible to the sphere of the plausible.

The Motion will be denied with respect to the claim for statutory damages.

### 4. Harmonizing RESPA and F.R.B.P. 3002.1

The Letters sent to the Defendant largely question bankruptcy attorney fees claimed by the Defendant. The fees were asserted in the 3002.1 Notice filed by the Defendant.

The 3002.1 Notice implements F.R.B.P. 3002.1. This rule applies in Chapter 13 cases to claims that: 1) are secured by an interest in the debtor's principal residence; and, 2) the plan provides that the debtor or the trustee will make installment payments on the claim. Rule 3002.1 is an effort to ensure that a debtor is fully informed about the amounts he owes and is not surprised upon leaving bankruptcy. *In re Meyer*, 596 B.R. 172, 178 (Bankr. M.D. Pa. 2019); *In re Formosa*, 582 B.R. 423, 427 (Bankr. E.D. Mich. 2018).

The Defendant argues that allowing this action under RESPA, and outside of the bankruptcy proof of claim process, upsets the "delicate balance" created by the Bankruptcy Code. 5-19-ap-00116 RNO, ECF No. 45, p 13. The Defendant cites *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017) as support for this proposition.

In *Midland Funding*, the Supreme Court considered a creditor's filing of a proof of claim when, pre-petition, the statute of limitations for the claim had expired under applicable non-

bankruptcy law. The debtor filed suit in district court alleging that Midland Funding violated the Fair Debt Collection Practices Act by filing the "stale" proof of claim.

Justice Breyer authored the majority opinion in *Midland Funding*. This Court views *Midland Funding* to be of limited application. The opinion includes:

> Like the majority of Courts of Appeals that have considered the matter, we conclude that Midland's filing of a proof of claim that on its face indicates that the limitations period has run does not fall within the scope of any of the five relevant words of the Fair Debt Collection Practices Act. We believe it reasonably clear that Midland's proof of claim was not "false, deceptive, or misleading." Midland's proof of claim falls within the Bankruptcy Code's definition of the term "claim." A "claim" is a "right to payment." 11 U.S.C. § 101(5)(A). State law usually determines whether a person has such a right. See *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450–451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). The relevant state law is the law of Alabama. And Alabama's law, like the law of many States, provides that a creditor has the right to payment of a debt even after the limitations period has expired.

*Midland Funding*, 137 S. Ct. at 1411.

The Defendant has not cited any case applying the reasoning of *Midland Funding* to matters brought under RESPA. There are significant factors which distinguish the cases presented. *Midland Funding* addressed a pre-petition claim, which has historically been governed by the proof of claim process. Here, the Defendant gave notice of a post-petition claim for professional fees. In part, *Midland Funding* considered the meaning of "claim," a defined term under 11 U.S.C. § 101(5) of the Bankruptcy Code.[2] In this case, the Court cannot find the same conflicting overlap between allowing an action under RESPA and the 3002.1 Notice, particularly since it has been withdrawn. The withdrawal is significant since there is no extent filing in this Court which would allow the Debtor to question the asserted fees.

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

11

Further, in part, both RESPA and Rule 3002.1 were designed to allow borrowers and debtors to obtain information concerning their mortgage loans. Thus, the statute and the Rule are easily harmonized. The Motion is denied in this regard.

### C. Truth-in-Lending Act

Count 2 of the Complaint alleges that the Defendant violated the Truth-in-Lending Act ("TILA"). 15 U.S.C. § 1601. et seq. TILA provides that its purposes include, ". . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit . . . ." 15 U.S.C. § 1601(a).

TILA's purpose ". . . is to assure credit customers a meaningful disclosure of credit terms . . . and thereby to avoid the uninformed use of credit." *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975). *McCrackin* also found that TILA is a remedial statute that should be construed liberally to achieve its goals. *Id.* at 262; *see also In re Wolfe*, 2000 WL 36688916 at *1 (Bankr. D. Md., May 19, 2000).

The Complaint alleges that each of the Letters requested a payoff statement for the Debtor's loan, which the Defendant originated. 5-19-ap-00116 RNO, ECF No. 42, ¶ 61. The final paragraph of each of the Letters reads, "[p]lease also provide a payoff statement and the name and address of the owner of the loan." 5-19-ap-00116 RNO, ECF No. 42-1, Ex. A.

It is further alleged that the Defendant failed to provide a payoff statement. TILA provides:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request from *or on behalf of* the borrower.

15 U.S.C. § 1639(g) (emphasis added).

The Defendant appears to argue that the Letters are not proper requests under TILA. It focuses on the fact that the request came from Debtor's counsel, rather than the Debtor himself.

12

However, as noted above, § 1639(g) includes a request "on behalf of the borrower." Counsel for the Debtor made the request on behalf of the Debtor. The facts, being viewed in the light most favorable to the Debtor, show his attorney made proper requests, which were never answered by the Defendant.

TILA creates a private cause of action, potentially, for actual and statutory damages. *Vallies v. Sky Bank*, 591 F.3d 152, 156 (3d Cir. 2009); *In re Regan*, 439 B.R. 522, 527 (D. Kan. 2010); *see also Williams v. Gelt Fin. Corp.*, 237 B.R. 590, 599-600 (E.D. Pa. 1999) (damages may be awarded under TILA both for a lender's loan disclosure and loan rescission violations).

Count 2 pleads a plausible claim for violations of TILA. The Motion will be denied as to Count 2.

## IV. CONCLUSION

The Motion will be granted as to Count 1, only to the extent that the Letters do not constitute QWRs under RESPA. Otherwise, the Motion is denied as to Count 1. The Motion will be denied as to Count 2 of the Complaint. The Debtor will be granted leave to file a final amended complaint within twenty-eight days. The Defendant's response to any amended complaint will be due twenty-eight days after service.

Dated: October 28, 2020            By the Court,

*Robert N. Opel II* (signature)
Robert N. Opel, II, Bankruptcy Judge (BI)