# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CLARENCE W. LEWIS JR., | : | Adversary Proceeding No. |
|  | : | 5:19-ap-00116 |
|  | : |  |
| Plaintiff, | : | Related Bankruptcy Case No. |
|  | : | 5:19-bk-01873 |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| THE MONEY SOURCE INC., | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## DEFENDANT'S BRIEF IN OPPOSITION
## TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

                                                                          **Page**

I. INTRODUCTION ................................................................................1

II. FACTS AND PROCEDURAL POSTURE........................................................2

III. ARGUMENT....................................................................................4

  A. TILA AND RESPA DO NOT MANDATE RECOVERY OF ATTORNEYS' FEES IN THIS MATTER.......................................................................5

  B. THE COSTS AND FEES REQUESTED ARE UNREASONABLE. .............9

  C. ALTERNATIVELY, THE COURT SHOULD AWARD NO MORE THAN A REASONABLE FEE GIVEN PLAINTIFF'S LIMITED RECOVERY.........19

IV. CONCLUSION ..............................................................................20

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975)...................4

*Denton v. Pennymac Loan Servs., LLC*, 252 F.Supp.3d 504 (E.D. Va. 2017)......8, 9

*Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008) .......................9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................5

*In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa., Sept. 30, 2022)..............passim

*In re Nosek*, 2006 WL 2700792 (Bankr. D.Mass., Sept. 19, 2006)..........................8

*In re Pine*, 705 F.2d 936 (7th Cir. 1983) ................................................11

*In re S.S.*, 271 B.R. 240 (Bankr. D.N.J. 2002)..........................................4

*In re West Chestnut Realty of Haverford, Inc.*, 186 B.R. 612 (Bankr. E.D.Pa. 1995) ................................................................................5

*Marek v. Chesny*, 105 S.Ct. 3012 (1985)..................................................5

*Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729 (7th Cir. 1978)........11

**FEDERAL STATUTES**

12 U.S.C. § 2602 ........................................................................6

12 U.S.C. § 2605 ........................................................................3

12 U.S.C. § 2605(f)(1) and (3)...........................................................7

15 U.S.C. § 1602 ........................................................................6

15 U.S.C. §§ 1639g, 1640(a)(2)(A) & (a)(3)...............................................3

15 U.S.C. § 1640(a)(3) ..................................................................6

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ...................................8

Fed. R. Civ. P. 68 ....................................................................3, 4, 5, 6, 9

# I.  <u>INTRODUCTION</u>

Resolution of Plaintiff's Petition will likely have a greater impact on general practice before this Court for years to come than on the specific outcome for Defendant The Money Source Inc. ("TMS"). Following an otherwise routine Chapter 13 case, Plaintiff's Counsel, Carlo Sabatini, Esquire ("Sabatini"), has been attempting to run an end around this Court's presumptively reasonable fee ("PFR") for Chapter 13 cases by manufacturing an adversary claim out of what should have been a discovery issue in the related Bankruptcy Case, and what was more accurately described as a dispute about nothing of consequence to Plaintiff. After ginning up claims against TMS, for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), and the Truth in Lending Act ("TILA"), Sabatini now strives to support his "loss leader" bankruptcy practice by seeking wholly excessive attorneys' fees. Neither this Court's rules, nor the jurisprudence binding this matter, support an award of attorneys' fees or condone Sabatini's conduct, and this Court should act now to dissuade future practitioners from similar opportunistic behavior. TMS respectfully requests that this Court find that Plaintiff's Petition for Attorneys' Fees and Costs (Doc. 128, the "Petition") seeks excessive costs and attorneys' fees, and limit Plaintiff, Clarence W. Lewis Jr.'s ("Lewis") recovery to $6,000.00, as provided in TMS' Offer of Judgment (Doc. 127-1).

1

## II.    FACTS AND PROCEDURAL POSTURE

On April 30, 2019, Lewis filed a Voluntary Petition for Individuals Filing for Bankruptcy.  (Doc. 1, No. 5:19-bk-01873).  On July 24, 2019, the Court confirmed Lewis' First Amended Chapter 13 Plan (the "Amended Plan").  (Docs. 34 & 38, No. 5:19-bk-01873). On July 3, 2019, before the Court approved the Amended Plan, TMS filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges (the "Notice").  (See Doc. 9-1 at 1, 3; Doc. 41, No. 5:19-BK-01873).  The Notice listed attorneys' fees incurred by TMS' outside counsel reviewing the impact of the Amended Plan on Lewis' obligations under a loan and mortgage that Lewis executed in TMS' favor. (See Doc. 9 at ¶ 6; Doc. 9-1 at 1, 3). Sabatini claims to have perceived the fees in the Notice ($900) as "unreasonably large."  He then sought information from TMS' in-house and former outside counsel regarding how the fees were calculated.  (Doc. 9-1 at 1, 3).  Any questions concerning the Notice should have been resolved during the pendency of the related Bankruptcy Case through discussions among counsel or common discovery practices.

Nevertheless, on August 6, 2019 and September 27, 2019, while still in close contact with TMS' counsel, Sabatini sent two letters *directly* to TMS (the "Letters"), without a copy to counsel, that were in essence discovery requests related to the Notice. (Doc. 9-1). Sabatini requested the same information about which he had been communicating with TMS' counsel, and in an apparent attempt to invoke RESPA

and TILA, he included a request for any estimate of the value of the property, a payoff statement, and the name and address of the owner of the loan. In response to discussions with Sabatini and the Letters, on October 7, 2019, TMS withdrew the Notice (Doc. 41), thereby disclaiming any entitlement to the $900 in attorneys' fees it expended in response to Lewis' Bankruptcy Petition. Once TMS withdrew the claim for $900, Lewis had no legitimate basis to seek discovery or relief as to those fees, and as (unnecessary) discovery in this matter would later confirm, Lewis had no good faith basis to seek the other information requested in the Letters. Put plainly, Sabatini's initiation and prosecution of the Adversary Action have been almost exclusively about generating fees for his firm.

In this proceeding, Lewis claimed that TMS' failure to respond to the Letters constitutes a violation of RESPA, 12 U.S.C. § 2605, and TILA, 15 U.S.C. §§ 1639g, 1640(a)(2)(A) & (a)(3). However, given TMS' withdrawal of the Notice, and Judge Opel's decision dismissing Count I of Lewis' complaint alleging a qualified written request ("QWR") (Doc. 55), Lewis' only entitlement to relief, at best, comprises the minimal statutory damages provided under RESPA and TILA.

In light of the minimal damages available to Lewis, TMS sought early on to amicably resolve this matter through Offers of Judgment pursuant to Fed. R. Civ. P. 68. On January 23, 2020 and April 2, 2020, TMS served Offers of Judgment on

3

Sabatini, the more recent being for $7,000.[1]  At no time did Lewis have any out-of-pocket losses related to the Letters, and Sabatini's reasonable fees related to the Letters at that point should have been easily covered by splitting the $7,000 Offer of Judgment with Lewis. Sabatini, however, dragged the litigation on for years, with little if any attendant benefit to Lewis. On March 16, 2022, following mediation and in an effort to cease Sabatini's unabashed crusade to generate unending legal fees, TMS offered to settle for $6,000 and reserved all rights to contest the anticipated fee application by Sabatini. On March 24, 2022, Lewis accepted TMS' March 16, 2022 Offer of Judgment (Doc. 127).[2]  Thereafter, on December 8, 2022, Lewis filed the Petition seeking an award of attorneys' fees and costs totaling $66,678.68.

## III.  ARGUMENT

It is well-settled that a prevailing party is not entitled to attorneys' fees except under certain limited circumstances. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (referring to this principle as the "American Rule").  The American Rule applies to litigation conducted before Bankruptcy Courts. *In re S.S.*, 271 B.R. 240, 244-45 (Bankr. D.N.J. 2002) (citing *In re Fox*, 725 F.2d 661, 662 (11th Cir. 1984)). There are four recognized exceptions to the

---

[1] Copies of the Offers of Judgment are attached hereto as Exhibits A and B respectively. Fed. R. Civ. P. 68(b) (stating, "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs.").

[2] Plaintiff did not file the Acceptance of Judgment until December 5, 2022.

4

American Rule, only one of which is relevant here: a contract or statute granting a right to attorneys' fees. *In re West Chestnut Realty of Haverford, Inc.*, 186 B.R. 612, 617 (Bankr. E.D.Pa. 1995) (citation omitted). An award of reasonable attorneys' fees "must be determined on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Moreover, an award of attorneys' fees is left to the sound discretion of the Court. *In re Schermer*, 388 N.R. 123, 126 n.3 (Bankr. E.D.Pa. 2008). For the reasons set forth below, this Court should not award Plaintiff the costs and attorneys' fees that he seeks in the Petition.

A.    TILA AND RESPA DO NOT MANDATE RECOVERY OF ATTORNEYS' FEES IN THIS MATTER.

Lewis contends that two statutory bases compel this Court to award him attorneys' fees, claiming that "TILA and RESPA each require an award of costs and attorney's fees to a successful plaintiff." Plaintiff's Brief in Support of His Petition for Attorney's Fees and Costs ("Plaintiff's Brief"), at 2. However, when reading the clear and unambiguous language provided in TILA and RESPA, this is not so.

As an initial matter, the mere acceptance of an Offer of Judgment does not guarantee an award of attorneys' fees. It is long-settled that a Rule 68 Offer of Judgment is a "cost" shifting mechanism. In considering whether "costs" under Rule 68 necessarily include attorneys' fees, the United States Supreme Court noted that "costs," as used in Rule 68, "was intended to refer to all costs properly awardable *under the relevant substantive statute* or other authority." *Marek v. Chesny*, 105

5

S.Ct. 3012, 3016 (1985) (emphasis added). It added, "absent congressional expressions to the contrary, when the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Id.* As discussed further below, neither TILA nor RESPA define "costs," as including attorneys' fees. *See also*, 15 U.S.C. § 1602; 12 U.S.C. § 2602. Accordingly, Lewis must establish an independent entitlement to attorneys' fees, which he cannot do.

*First,* under TILA, Section 1640(a) defines a plaintiff's potential recovery, including reasonable attorney's fees and costs, as follows:

> (a) Except as otherwise provided in this section, any creditor *who fails to comply with any requirement imposed under this part*, . . . is liable to such person in an amount equal to the sum of:
>
> > (1) any actual damage sustained by such person as a result of the failure;
> >
> > . . . .
> >
> > (3) in the case of any successful action to enforce the foregoing liability . . . the costs of the action, together with a reasonable attorney's fee as determined by the court[.]

15 U.S.C. § 1640(a)(3) (emphasis added).

*Second*, and similarly, RESPA provides:

> Whoever *fails to comply with any provision of this section* shall be liable to the borrower for each such failure in the following amounts:
>
> > (1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

> (A) any actual damages to the borrower as a result of the failure; and

> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

> . . . .

(3) Costs

> In addition to the amounts under paragraph (1) and (2), in the case of any successful action under this section, the costs of the action, together with any attorneys (sic) fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f)(1) and (3) (emphasis added). In addition to underscoring this Court's discretion in awarding (or not) reasonable attorneys' fees, TILA and RESPA condition any such award upon a finding that a person (or entity) *failed to comply* with the provisions contained in each respective statute. Because there is no such finding here, Lewis is not entitled as a matter of right to an award of attorneys' fees.

Lewis accepted TMS' Offer of Judgment on March 24, 2022 (Doc. 127). Although the Offer of Judgment "allow[s] a judgment to be taken against [TMS] in satisfaction of all claims by" Lewis, it is silent with respect to TMS' alleged noncompliance with TILA and RESPA. As this matter did not proceed to a hearing on the merits, this Court has not found TMS to be in violation of either statute. Since

7

TILA and RESPA explicitly premise an award of costs and attorneys' fees on a violation of its provisions, and no such violation has been found to have occurred here, neither TILA nor RESPA mandate this Court to award attorneys' fees.

For this reason, Lewis' contention that "an acceptance of an offer of judgment is clearly a successful outcome," misses the mark. Plaintiff's Brief, at 2. In support of this proposition, Lewis baldly asserts that "TILA and RESPA each require an award of costs and attorney's fees to a *successful plaintiff*." *Id.* (emphasis added). As outlined above, TILA and RESPA say no such thing. An award of costs and reasonable attorneys' fees under TILA and RESPA clearly and unambiguously require a finding that a party failed to comply with those statutes. *In re Nosek*, 2006 WL 2700792, at *3 (Bankr. D.Mass., Sept. 19, 2006) (noting, "the Defendant is correct in its assertion that absent damages caused by a RESPA violation, there is no 'successful action' under RESPA,") (listing cases).[3]

Nor does Lewis' citation to *Denton v. Pennymac Loan Servs., LLC*, 252 F.Supp.3d 504 (E.D. Va. 2017), for the proposition that the "acceptance of an offer of judgment is clearly a successful outcome," salvage his contentions. Plaintiff's Brief, at 2. Aside from being non-precedential, *Denton* involved a request for attorneys' fees for an alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, not RESPA or TILA. Importantly, the Court in *Denton* noted that an

---

[3] A copy of the *In re Nosek* opinion is attached here to as Exhibit C.

Offer of Judgment "may shift and/or limit the attorney-fee burden," but cited to *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008), for the proposition that "under the Rule 68 offer of judgment in the case, plaintiff was entitled to attorneys' fees up to the date of the offer." That is, *Denton* does not stand for the principle that the mere acceptance of an Offer of Judgment constitutes a "successful outcome," entitling the Plaintiff to reimbursement for fees.

Here, since TILA and RESPA do not define "costs" as including attorneys' fees, and TMS has not been found to be in violation the same, Lewis' mere acceptance of TMS' Offer of Judgment does not mandate the recovery of attorneys' fees.

## B. THE COSTS AND FEES REQUESTED ARE UNREASONABLE.

Even if this Court finds that Lewis is entitled to recover some costs and reasonable attorneys' fees, the amount requested by Sabatini is wholly unreasonable. The Petition seeks approval of attorneys' fees and costs of $66,678.68, for services provided from August 30, 2019, until the present, and additional fees related to the Petition itself, which may subsequently be incurred.[4] The requested amount relates to work done by Sabatini, Brett Freeman, Esquire ("Freeman"), and a paralegal

---

[4] In the Petition, Lewis claims that $5,732.50 of the $66,678.68, was stipulated to at a status conference on November 8, 2022. At that hearing, TMS stipulated to the $5,732.50 subject to objections raised following the filing of the instant Petition, which are outlined herein. TMS maintained this same approach in stipulating to all fees that Lewis claims were previously agreed to as reasonable.

9

working for Sabatini, Ashley Werner ("Werner"). According to invoices supplied by Sabatini, *see* Petition Exhibits A1, A2, and B, Sabatini, Freeman, and Werner collectively expended no less than 183.40 hours pursuing Lewis' claim that TMS allegedly failed to respond to the Letters, even after TMS withdrew its claim, and any information requested in the Letters was wholly worthless to Lewis. Sabatini is not entitled to those fees.

In reviewing the Petition, the Court must "conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Badyrka*, 2022 WL 4656034, at *9 (Bankr. M.D. Pa., Sept. 30, 2022)[5] (Conway, J.) (citation omitted). Further, a "judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id*. (citing *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 854 (3d Cir. 1994)). In addition, "[w]hen making its consideration, the court is not required to make a line-by-line analysis of the fee application, and a sampling will suffice." *Id*. (citation omitted). Instead, "[b]ecause its time is precious the reviewing court need only correct reasonably discernable abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Id*. (citation omitted).

---

[5] A copy of the *In re Badyrka* opinion is attached hereto as Exhibit D.

Moreover, "a fee applicant's failure to exercise billing judgment will result in reduction of fees where, in the sound discretion of the bankruptcy court, such fees are unreasonable." *Badyrka*, 2022 WL 4656034, at \*10 (citation omitted). Such "billing judgment" has been described as "the voluntary reduction of a fee by counsel to a private client for services that either conferred a negligible benefit or were excessive." *Id*. This Court previously observed that "[s]uch billing judgment is an 'absolute requirement' of fee applications in bankruptcy." *Id*. (citation omitted). Thus, when rendering a fee determination, "the court must take into consideration whether the professional exercised 'reasonable billing judgment.'" *Id*. Notably, the "amount of money at stake in a case is always *highly relevant* to the reasonableness of an attorney's fee request[.]" *In re Pine*, 705 F.2d 936, 939 (7th Cir. 1983) (emphasis added); *Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978) (finding that 350 hours spent on a TILA case was "clearly out of proportion with the amount in controversy.").[6] Finally, the Petitioner "bears the burden of proving that the fees and expenses sought are reasonable and necessary." *Badyrka*, 2022 WL 4656034, at \*8 (citation omitted). When applying these

---

[6] This Court's Code of Professional Conduct is also informative, as it is worth noting that all members of the Bar of this Court are expected to "earnestly attempt to resolve differences through negotiation, expeditiously and *without needless expense*." United States District Court for the Middle District of Pennsylvania, Code of Professional Conduct, at ¶ 6 (emphasis added).

principles to the instant matter, the expenses, fees, and hours incurred are entirely unreasonable for *several* reasons.

This Adversary Action is based on Lewis' claim for information from TMS, which at the time the Adversary Action was initiated was clearly of no value whatsoever to Lewis. TMS had withdrawn its claim for $900, so there was no basis to request information about the withdrawn claim. Similarly, Lewis had no legitimate basis to seek valuation information, a payoff statement or confirmation of the name and address of the owner of the loan.

In *Badyrka*, this Court considered a Chapter 13 Debtor's Counsel's Interim Application for Compensation and Reimbursement of Expenses (the "Fee Application") filed by Sabatini. Like the underlying Bankruptcy Case in this matter, *Badyrka* involved a routine Chapter 13 case. Notwithstanding the straightforward nature of that case, Sabatini sought approval of interim compensation of $10,452.50 and reimbursement of $438.07, for services that he provided over an approximately eight-month period.

After considering the totality of the circumstances, this Court found that the Fee Application was excessive, and reduced the compensation requested by Sabatini by nearly half. In so finding, this Court determined that several factors were especially relevant. First, it found that Sabatini's "billing in this 'routine' case appear[ed] to be grossly excessive compared to other practitioners in this District."

*Badyrka*, 2022 WL 4656034, at *3. For example, it noted that "Mr. Sabatini's hourly rate of $415.00 would be considered one of the highest rates for consumer bankruptcy practitioners in this District, including attorneys with substantially more experience." *Id*. In light of this "premium" billing rate, the Court took exception to Sabatini's apparent failure to delegate administrative or paralegal tasks accordingly. In addition, it observed that Sabatini's invoices often reflected excessive time billed to simple tasks, such as the preparation and filing of the standard Chapter 13 form, numerous charges for communications "no matter how minor," and duplicative and overhead charges. *Id*. at *4. This Court's review of Sabatini's invoices led it to wonder "how these unreasonably large fees can be incurred at this stage of the case and how the bankrupt Debtor, if he was paying these fees, could afford such fees." *Id*. This case presents an even more egregious overreach by Sabatini. The Adversary Action was not filed until after TMS withdrew its $900 claim, so the only potential gain for Lewis was an award of a statutory penalty and obtaining information that was useless to him. It is difficult to imagine any litigant affording the fees that Sabatini seeks to obtain the miniscule relief potentially available to Lewis at the time this action was commenced.

This Court in *Badyrka* next considered the PRF utilized by most attorneys in Chapter 13 cases in this District as a "guide or starting point to what should be considered a reasonable fee in a routine Chapter 13 case in this District." *Badyrka*,

2022 WL 4656034, at *5-6. Like many Bankruptcy Courts in the United States, this District provides the PRF method for billing, which "was adopted as an alternative to the traditional lodestar approach," employed by Sabatini herein. *Id*. at *5. The Court noted that, currently, under Local Rule 2016-2, the PRF is $4,500.00. *Id*., at *5 n.16. In the normal course, the Court "presumes that upon the attorney's affirmation of the work done, fees that are less than or equal to the PRF are deemed to be reasonable." *Id*. In *Badyrka*, the Court noted disapprovingly that Sabatini's request was more than double the PRF in the District, and that, as an interim request, he would likely attempt to bill additional fees. *Id*.

After setting forth its initial observations regarding the unreasonableness of the Fee Application, the Court then assessed Sabatini's request in light of the principles outlined above, and found that a reduction of Sabatini's fees was warranted. In addition to the failures in Sabatini's billing judgment discussed *supra*, the Court highlighted its concern that Sabatini "appears to use his bankruptcy cases as a 'loss leader' and covers any lost fees not collected in his Chapter 13 cases by prosecuting" other claims. *Badyrka*, 2022 WL 4656034, at *11. Specifically, the Court emphasized testimony by Sabatini in which he asserted that he

> was not making money on this case. The way I make money is by all of the affirmative claims that I bring for them [(referencing his Chapter 13 clientele)]. I would file Federal Debt Collection and Practice Act claims, Telephone Consumer Protection Act claims, right, and I'd make the money on those claims. So, my partner, [Mr.] Freeman, that's what he does. I get them in the door with the bankruptcy, *we find the claims*

14

and he makes the money that keeps the lights on, the claims. Bankruptcy is not keeping it on.

*Id*., at *11 (emphasis added). Continuing, the Court stated, "[w]hat is concerning is that it appears as though the statutory claims that Mr. Sabatini brings on behalf of his clients/debtors are limited to $1,000.00 per claim by statute and the attorneys fees have no such limit." *Id*. Moreover, it added, "the debtor may be tied-up in protracted litigation for several years for a $1,000.00 recovery while the case is being prosecuted to recover Mr. Sabatini's attorney fees lost in his 'loss leader' cases." *Id*.

Here, Sabatini's conduct is the exact same conduct that the Court found so worrisome in *Badyrka*. *First*, Sabatini appears to have manufactured affirmative claims under RESPA and TILA by requesting information on behalf of Lewis that was of no actual value to Lewis. For example, there was no good faith basis to request a payoff statement because Lewis had no reasonable basis to payoff his loan from TMS. Based on Sabatini's testimony in *Badyrka*, such conduct was clearly geared towards running an end around the PRF, which the Court openly views as a reasonable starting point when considering fee applications, and which would have limited Sabatini's ability to recoup his expenses had he pursued this matter in the Bankruptcy Case (as he should have).

*Second*, discovery taken in this matter casts doubt on whether Lewis had a legitimate basis to seek the information that he sought. For instance, Lewis requested a payoff amount for his loan. However, in Plaintiff's Responses to Defendant's First

15

Set of Combined Discovery Requests Directed to Plaintiff, Lewis responded to a request that he "[i]dentify any actions, if any, [that he] took from July 24, 2019 to present to refinance, payoff or discharge," the loan he had with TMS, by claiming the term "your loan" was ambiguous. Plaintiff's Responses to Defendant's First Set of Combined Discovery Requests Directed to Plaintiff ("Plaintiff's Responses"), at 2. A true and correct copy of Plaintiff's Responses are attached hereto as Exhibit E. Nevertheless he asserted that he has not attempted to pay off his loan, aside from making payments. *Id*. In response to Plaintiff's Requests for Admission, Lewis wholly failed to answer simple questions, such as whether he had attempted to pay off or discharge his loan, or whether he had the financial resources to do so. Ex. 1, at 5-6. It appears beyond doubt that the information requested in the Letters was sought only to create a claim for Sabatini to litigate, and not to benefit Lewis.

Sabatini made matters worse by alleging that TMS' conduct was part of a "pattern and practice of noncompliance," which he would be required to prove to obtain statutory damages under RESPA. Despite Lewis having no good faith basis to allege that this was part of a "pattern and practice," TMS was forced to manually review hundreds of its files to confirm that it did not routinely disregard RFIs from parties in bankruptcy. Indeed, TMS' lengthy and costly review revealed that this was the only instance where TMS did not directly respond to an RFI from a client in

bankruptcy. Discovery confirmed that Lewis could not establish his claim that TMS had a pattern and practice of noncompliance.

Further, Lewis alleged that he had knowledge of "consumers" and "former employees" that could corroborate such a pattern and practice (*see* Third Amended Complaint, Doc. 57, at ¶¶ 48-52), but his discovery responses did not support this contention. Instead, he claimed that the information necessary to identify such people was "presumably" available to TMS from a Consumer Financial Protection Bureau database. Ex. 1., at 3-4. Likewise, when asked to provide documents in his possession to support his allegations in this regard, Lewis asserted that he had none. *Id*., at 8. Lewis' discovery responses reveal that his allegations and his discovery efforts lacked a good faith basis. They were nothing more than a fishing expedition geared towards driving Sabatini's fees.

*Third*, in light of the dearth of evidence to support Lewis' claimed damages, and the minimal damages at stake even if Lewis were successful, a sensible attorney would be expected to exercise (and would exercise) the reasonable billing judgment this Court also found lacking in Sabatini in *Badyrka*. A review of Sabatini's invoices reflects no such judgment. Like in *Badyrka*, Sabatini's invoices are rife with duplicative charges, charges better suited for associates, paralegals or staff, and charges for minor communications with his client, TMS' former and current counsel, and others. For example, between December 6, 2019, and December 18, 2019,

Sabatini generated eighteen (18) separate entries related to communications to opposing counsel or his client. This pattern persists (apparently pervasively through Sabatini's practice, as reflected in the *Badyrka* opinion).

Most worrisome is Sabatini's response to TMS' Offers of Judgment made years ago, which would have adequately and reasonably compensated Lewis and Sabatini had they been accepted when offered. Specifically, as noted in Exhibit A to the Petition, on April 2, 2020, TMS provided Lewis with an Offer of Judgment providing for a payment of $7,000.00. *See* Exhibit A1, pp 6-7, entries on 4/2/2020 and 4/13/2020. Lewis and Sabatini would have been reasonably compensated (in actuality more than reasonably compensated) had they accepted the April 2, 2020 Offer of Judgment. Had Lewis been paying directly for Sabatini's fees, there is little doubt that the case would have resolved at that point. Sabatini, however, was already off to the races pumping up his fees. As of April 2, 2020, Sabatini and his colleagues had billed Lewis an incredible (and excessive), approximately $13,000.00 in fees, including 98 entries for .1 hours spent largely on e-mails and other communications (totaling $4,067.00). Instead of accepting TMS' Offer of Judgment, Sabatini continued on his fishing expedition, racking up over $50,000.00 in additional fees before accepting TMS' March 16, 2022 Offer of Judgment.

When considering the totality of the circumstances, the fees sought in the Petition are clearly excessive. In order to deter future practitioners from engaging in

the sort of opportunistic behavior that Sabatini exhibited here and in *Badyrka*, this Court should find that Lewis is entitled to no more than provided in the Offer of Judgment accepted by him on March 24, 2022.

### C. ALTERNATIVELY, THE COURT SHOULD AWARD NO MORE THAN A REASONABLE FEE GIVEN PLAINTIFF'S LIMITED RECOVERY

For all the reasons set forth above, the fees that Lewis and Sabatini request in the Petition are not warranted under RESPA and TILA, are wholly unreasonable, and should be denied in their entirety. Nevertheless, if this Court grants the Petition in some respect, Lewis' award should be limited to what the Court determines to be a reasonable fee for the result obtained. The Court should decline to review Sabatini's time entries on a line by line basis because neither the Court nor TMS can identify whether most individual time entries are, standing by themselves, reasonable or not. The Court can and should disregard significant amounts of time expended by Sabatini that did not contribute to meaningful relief for Lewis. For example, Sabatini's averments and subsequent discovery into the theory that TMS had a pattern and practice of not responding to RFIs was wholly unsupported when alleged, and disproven in discovery. Similarly, Judge Opel dismissed Lewis' claims based on QWRs under RESPA (Doc. 55), and Lewis cannot recover for those unsuccessful endeavors. The Court should not consider any such time in fashioning a fee award.

If the Court looks at what was actually obtained through litigation, the fee, if any, should be modest at best. Lewis obtained a judgment of $6,000, even though Lewis suffered no out of pocket loss. Under the "American Rule," Sabatini's fee should be paid out of that recovery. Beyond the $6,000, Lewis obtained the breakdown of how TMS was billed $900 for an attorney to review Lewis' bankruptcy filings, information which is seemingly worthless to Lewis because the $900 charge had been withdrawn. Lewis received confirmation that TMS was the owner of the loan and the address for TMS, but he has not identified any reason why he sought such information in 2019 or why it is of any value to him. Similarly, Lewis obtained TMS' information on the valuation of the property and a payoff statement, but again that information is of no real value to him because he has not been in a position to payoff his loan from TMS.

Comparing what Lewis obtained to the outrageous fees now sought by Sabatini exposes this Adversary Action as nothing other than blatant opportunism. The Court should not reward Sabatini's hijinks, or it is sure to see them repeatedly in the future.

## IV.   **CONCLUSION**

For all the foregoing reasons TMS respectfully requests that this Court find that Plaintiff, Clarence W. Lewis Jr.'s Petition for Attorneys' Fees and Costs seeks

excessive costs and attorneys' fees, and limit Plaintiff's recovery to $6,000.00, as provided in the Offer of Judgment accepted by Plaintiff on December 5, 2022.

Respectfully submitted,

Dated:  January 9, 2023

/s/ Matthew M. Haar
Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
matt.haar@saul.com – 717-257-7508

Francis X. Riley III, Esq. (74075)
Saul Ewing LLP
650 College Road East, Suite 4000
Princeton, NJ 08540-6603
francis.riley@saul.com
(Admitted Pro Hac Vice)

John Paul Regan, Esq. (320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
jp.regan@saul.com

*Attorneys for Defendant The Money Source Inc.*

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief in Opposition to Plaintiff's Petition for Attorney's Fees and Costs complies with the requirements of Local Rule 9013-2, because it contains 4821 words.

/s/ Matthew M. Haar
Matthew M. Haar

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I served a true and correct copy of the foregoing Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs upon the following through ECF filing:

Carlo Sabatini, Esq.
Sabatini Freeman, LLC
216 N. Blakely Street
Dunmore, Pennsylvania 18512
carlo@bankruptcypa.com

*Attorneys for Plaintiff*

Dated: January 9, 2023 /s/ Matthew M. Haar
Matthew M. Haar