## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Clarence Lewis, | Bankruptcy No. 5:19-bk-01873-MJC |
| Clarence Lewis,<br>　　　Plaintiff | Chapter 13 |
| | Adversary No. 5:19-ap-00116-MJC |
| v. | |
| The Money Source, Inc.,<br>　　　Defendant | |

### **Plaintiff's Reply Brief in Support of Fee Application**

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Email carlo@bankruptcypa.com

# **Table of Contents**

I.    Table of Authorities ........................................................................iii

II.   Argument ........................................................................................ 1

    1.   Who is to blame for not settling? ................................................ 1

    2.   *Badyrka* is of limited applicability. .......................................... 5

    3.   Defendant's two specific objections........................................... 8

    4.   Proportionality is not a basis to reduce a fee. .......................... 10

    5.   Plaintiff is contractually <u>and</u> statutorily entitled to attorneys' fees........ 13

         a. Plaintiff is entitled to attorneys' fees as a matter of contract. ............. 13

         b. Any ambiguity is construed against Defendant................................... 13

         c. Plaintiff is entitled to attorneys' fees as a matter of statute............... 14

         d. The fee is allowed because Plaintiff did not explicitly waive it............ 15

    6.   The degree of success is high. .................................................. 16

III.  Conclusion ................................................................................... 18

# Table of Authorities

## Cases

*A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*,
2019 WL 2715681 (M.D. Pa. June 28, 2019) ............................................... 11, 12, 13

*Andrews v. Pro. Bureau of Collections of Maryland, Inc.*,
270 F.R.D. 205 (M.D. Pa. 2010) ................................................................. 3

*Baker Botts L.L.P. v. ASARCO LLC*,
576 U.S. 121 (2015) ................................................................................... 4

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ................................................................................... 15

*Burlington v. Dague*,
505 U.S. 557 (1992) ................................................................................... 18

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ................................................................................... 13

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) ............................................................................... 10, 11

*Cunningham v. City of McKeesport*,
807 F.2d 49 (3d Cir. 1986) ...................................................................... 11

*Elaine v. Credit Control LLC*,
2018 WL 1705959 (E.D. Pa. Apr. 9, 2018) ................................................. 7

*Evans v. Port Auth. of New York & New Jersey*,
273 F.3d 346 (3d Cir. 2001) ...................................................................... 6

*Farrar v. Hobby*,
506 U.S. 103 (1992) ................................................................................... 17

*Grissom v. The Mills Corporation*,
549 F.3d 313 (4th Cir. 2008)..................................................................... 15

*In re Badyrka*,
2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022) ....................... 5, 6, 7

*In re Busy Beaver Bldg. Ctrs., Inc.*,
19 F.3d 833 (3d Cir. 1994)...................................................................... 5, 6

*In re Maruko Inc.*,
160 B.R. 633 (Bankr. S.D. Cal. 1993) ....................................................... 6

Case 5:19-ap-00116-MJC    Doc 131    Filed 01/23/23    Entered 01/23/23 22:45:48    Desc
Main Document    Page 3 of 24

*In re Nosek,*
  2006 WL 2700792 (Bankr. D. Mass. Sept. 19, 2006)................................................. 14

*In re Pine,*
  705 F.2d 936 (7th Cir. 1983) ................................................................................... 10

*Lima v. Newark Police Dep't,*
  658 F.3d 324 (3d Cir. 2011) .............................................................................. 14, 15

*Machado v. L. Offs. of Jeffrey H. Ward,*
  2016 WL 3574007 (D.N.J. June 29, 2016) ............................................................. 13

*Millea v. Metro-North R.R. Co.,*
  658 F.3d 154 (2d Cir. 2011) ................................................................................... 13

*Mirabel v. General Motors Acceptance Corp.,*
  576 F.2d 729 (7th Cir. 1978) ................................................................................. 10

*Ne. Women's Ctr. v. McMonagle,*
  889 F.2d 466 (3d Cir. 1989) .............................................................................. 11, 18

*Nordby v. Anchor Hocking Packaging Co.,*
  199 F.3d 390 (7th Cir.1999) ................................................................................... 14

*Prandini v. National Tea Co.,*
  585 F.2d 47 (3d. Cir. 1978) ...................................................................................... 4

*Reed v. Heller's Gas, Inc.,*
  5:13-ap-00207, Doc. 73 (M.D. Pa. Jan. 7, 2016) ..................................................... 4

*Rode v. Dellarciprete,*
  892 F.2d 1177 (3d Cir. 1990) ................................................................................... 5

*Romeo v. Simm Assocs., Inc.,*
  170 F. Supp. 3d 750 (M.D. Pa. 2016) ....................................................................... 7

*Shattuck v. Harmon Heating & Air Conditioning, LLC,*
  2019 WL 3202507 (E.D. Pa. July 16, 2019) ........................................................... 12

*Slantis v. Capozzi & Assocs., P.C.,*
  2011 WL 2531752 (M.D. Pa. June 24, 2011) ......................................................... 11

*Tolentino v. Friedman,*
  46 F.3d 645 (7th Cir. 1995) ................................................................................... 17

*Torres v. Metro. Life Ins. Co.,*
  189 F.3d 331 (3d Cir. 1999) ................................................................................... 16

iv

*United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.,*
  501 F.3d 283 (3d Cir. 2007) ................................................................... 11

*Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-op., Inc.,*
  298 F.3d 1238 (11th Cir. 2002) ............................................................. 15

*Washington v. Philadelphia Cnty. Ct. of Common Pleas,*
  89 F.3d 1031 (3d Cir. 1996) ................................................................... 12

**Statutes**

11 U.S.C. § 330 .......................................................................... 4, 5, 6
11 U.S.C. § 362 .............................................................................. 4
12 U.S.C. § 2605 ...................................................................... 14, 15
15 U.S.C. § 1640 .......................................................................... 15

**Regulations**

12 C.F.R. § 1024.36 ....................................................................... 1

**Rules**

Fed.R.Civ.P. 68 ................................................................. 4, 13, 14, 15

## Argument

**1. Who is to blame for not settling?**



This is how Defendant's lawyer introduced himself when he substituted into this case. Since throwing down this gauntlet, Defendant has tried to make this case about Plaintiff's counsel, lobbing an attack in virtually every court filing since.[1] The

---

[1] Doc. 8 – Answer, ¶ 7 ([Sabatini] sent the Requests for Information "in an attempt to communicate directly with TMS outside of its counsel in violation of applicable attorney ethics rules.") Because this particular attack accuses Plaintiff's counsel of unethical conduct, Plaintiff will respond to it. Where, as here, a mortgage servicer designates a specific address to be used for requests for information, then requests sent elsewhere are not valid. 12 C.F.R. § 1024.36. More importantly, Sabatini had asked Defendant's bankruptcy counsel whether he was authorized to receive the forthcoming request. Counsel indicated that he was not. *See* Sabatini Affidavit ¶ 1.

Doc. 14 – Brief in Support of First Motion to Dismiss, p. 13 ("[Sabatini] attempts to spring a RESPA and TILA trap. . .")

Doc. 17 – Brief in Support of Motion to Stay Discovery, p. 3 – ("Because, as [Sabatini] likely planned, TMS did not respond to the Letters. . .")

Doc. 45 – Brief in Support of Second Motion to Dismiss, p. 4 ("exactly as Lewis' counsel planned, TMS did not respond to the Letters, resulting in this Adversary Proceeding. . .")

assault reaches new heights with Defendant's latest brief, in which "Sabatini" appears 68 times. Critically, Defendant now claims that Sabatini is to blame for the length of this litigation:

> [O]n April 2, 2020, TMS provided Lewis with an Offer of Judgment providing for a payment of $7,000.00. Lewis and Sabatini would have been reasonably compensated (in actuality more than reasonably compensated) had they accepted the April 2, 2020 Offer of Judgment. Had Lewis been paying directly for Sabatini's fees, there is little doubt that the case would have resolved at that point. **Sabatini, however, was already off to the races pumping up his fees.**

(Doc. 130, p. 18, citations omitted, emphasis added.) This characterization is inaccurate.

Plaintiff has a judgment for $6,000 plus attorneys' fees. Comparing this actual result to the parties' early settlement positions is illuminating. Defendant now *concedes*, that as of the date of Attorney Riley's email, Sabatini's reasonable lodestar was $7,048.50. (Doc. 128-1) Thus, the value of the case was at least $13,048.50.[2] Plaintiff's demand of $13,000 was reasonable.[3]

---

Doc. 58 – Answer to Third Amended Complaint, pp. 7 – 8 ("an attempt by Plaintiff's counsel to evade discovery proceedings in the bankruptcy case, and the relief sought in Plaintiff's Complaint amounts to an attorney seeking a windfall by collecting attorneys' fees for improper submission of discovery demands that he knew were procedurally barred.")

Doc. 68 – Brief Opposing Motion to Compel Discovery, p. 2 ("because of Lewis' counsel's improper conduct . . . ")

Doc. 130 – Brief in Opposition to Fee Petition, *passim*

[2] In fact, the true value of the case was $1,385 more; the entries from the disputed A2 Bill should also be included.

[3] Consider how difficult it could have been from a client-relations standpoint for Attorney Riley to encourage Defendant to settle at that reasonable number. (cont.)

2

Defendant's settlement posture was less realistic. The day after Attorney Riley's email, Defendant tendered an offer of judgment for $2,000 plus fees. At first blush, that dollar amount might be considered a reasonable offer. A litigant does not have a crystal ball and cannot know exactly where a case will resolve. Thus, a settlement offer can be made in good faith even if it ultimately varies from the eventual result by a fair bit.

However, Defendant's settlement offer contained an additional requirement, namely, that Plaintiff waive any post-offer fees. The relevant portion of the offer provides:

> Defendant, The Money Source, Inc., hereby offers to allow entry of judgment pursuant to Rule of Civil Procedure 68, as follows:
>
> 1. Judgment in favor of Plaintiff, Clarence W. Lewis Jr., against Defendant in the total pretax sum of $2,000 in statutory penalty, and reasonable attorneys' fees and costs accrued as of the date of this Offer, as the court in this action determines are just and equitable.

By limiting the fees to those "accrued as of the date of this Offer," Defendant would require Plaintiff to forego fees for the time litigating the fee application, including time spent on any appeal that Defendant might file. Such language does have the fee-limiting effect that Defendant desired. *See Andrews v. Pro. Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205, 208 (M.D. Pa. 2010) (Nealon, J.) And

---

Attorney Mario Hanyon had secured that offer before Riley's firm appeared. What value would Attorney Riley's firm have provided to Defendant if Attorney Riley recommended acceptance of the offer that Attorney Hanyon had obtained?

3

that effect could be severe. The cost for time spent litigating a fee application could easily dwarf the roughly $8,500 in fees that Plaintiff had accrued.[4] Adding all of those uncompensated hours into the calculus would cause the *effective* hourly rate to be slashed. To prevent that result, in cases involving statutory awards of attorneys' fees the time spent litigating the fee petition is compensable. *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d. Cir. 1978).[5]

On April 2, 2020, Defendant tendered a new Rule 68 offer for $7,000.00, **inclusive** of attorneys' fees.[6] By that date, the fees that Defendant admits are reasonable were $11,396.50. (See Doc 128-1 "A1 Bill.") So, once the $6,000 judgment amount is included, the value of the case was over $17,000.[7] Can Defendant really claim that both Sabatini and Lewis would have been "more than reasonably compensated" by accepting $10,000 less than the value of the case? Should

---

[4] Considering the tone of Attorney Riley's entrance into the case, Plaintiff's counsel would have been naïve to expect that fee litigation would be resolved expeditiously.

[5] *Cf. Baker Botts L.L.P. v. ASARCO LLC,* 576 U.S. 121, 124 (2015)(11 U.S.C. § 330(a)(1) does not provide a basis to award attorneys' fees for work performed in defending an application for fees from the bankruptcy estate); *see also, Reed v. Heller's Gas, Inc.,* 5:13-ap-00207, Doc. 73 (M.D. Pa. Jan. 7, 2016)(Thomas, J.)(Exhibit B)(reconsidering prior order that had disallowed fees for fee litigation; on reconsideration, the court allowed the fees after finding that "Plaintiffs' counsel is not restricted by the language of § 330 but seeks compensation under the broader provisions of § 362(k)(1).")

[6] Although this offer contained a "plus fees" provision identical to that contained in the earlier offer of judgment, Defendant later explained that that language was included by mistake and that the new offer was instead a lump sum offer that precluded recovery of additional attorneys' fees. (See annotations boxed in red on portion of email string attached to Sabatini Affidavit as Exhibit 2.)

[7] The actual value of the case, when including the $5,094 of disputed time from the A2 Bill, was over $22,000.

Defendant be asserting that Sabatini "was already off to the races pumping up his fees"?

## 2. *Badyrka* is of limited applicability.

Defendant spends most of its brief discussing *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. Sept. 30, 2022), and claims that the instant case is no different. (*See e.g.,* Doc. 130, p. 15)("[h]ere, Sabatini's conduct is the exact same conduct that the Court found so worrisome in *Badyrka*."). But, *Badyrka* is of limited applicability here for a number of reasons.

First, in *Badyrka*, the Court's role was different. There, it was *sua sponte* fulfilling its "independent obligation to review fee applications presented for approval. . . 'which . . . derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest.'" *Id*. at p. 16, quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir. 1994). That review occurs "under 11 U.S.C. § 330 and 11 U.S.C. § 1325." *Id*. at p. 11.

Here, however, the fees are not to be paid from the debtor's estate, and § 330 is not applicable. Instead, because fees are being awarded under a non-bankruptcy fee-shifting statute, the Court's duty is almost exactly the opposite. It has no independent duty to *sua sponte* review fees and look for problems. That task lands on Defendant, which must lodge specific objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). And, it is *only* those issues that the Court must resolve. In fact, a court "cannot decrease a fee award based on factors not raised at all by the adverse party." *Id*.

5

Additionally, the extent of the Court's review is different under each standard. For a *sua sponte* review under § 330, the Circuit does not expect a court to scrutinize every line of a fee application. Instead the court "need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is entitled." *Badyrka* at p. 18, citing *Busy Beaver*. Thus, in *Badyrka* the Court cited to *In re Maruko Inc.*, 160 B.R. 633, 642, 645 (Bankr. S.D. Cal. 1993) for the proposition that "the court is not required to make a line-by-line analysis of the fee application, . . ." Defendant cites to that language as providing the standard here. (Doc. 130, p. 10.) It does not. The standard is different where the Court is ruling on an objection that has been raised with specificity by a party. Indeed, "it *is* necessary that the Court go line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001) (emphasis in original, internal quotation marks omitted).

Even if *Badyrka* had been decided under the same standard that applies here, it would still be of very limited relevance. At its essence, *Badyrka* was about delegation of duties. 95% of the fee reduction came from determinations that certain activities should have been performed by lower-paid professionals – i.e., attorneys were doing some paralegal work; paralegals were doing some secretarial work. The Court's analysis found only $273.00 that was not billable at all. Here, Defendant does not assert an "insufficient delegation" objection. Thus, the delegation principles at issue in *Badyrka* have not been raised here.

6

Furthermore, one bad opinion should not define an attorney, and *Badyrka* is not representative of Sabatini's career. To the contrary, in searching his files back to 2010, Sabatini has been able to find 12 cases where he filed a fee application that was opposed by a defendant. In nine of those cases, the full amount requested was awarded. In the remaining three cases, the amounts awarded were 93%, 92%, and 80% of the amounts requested. (Sabatini Affidavit attached as Exhibit A, ¶¶ 4 – 6.)

Finally, courts discussing Sabatini's practices and performance have commented favorably. *See e.g.*, *Elaine v. Credit Control LLC,* 2018 WL 1705959, at *7 and *11 (E.D. Pa. Apr. 9, 2018)("Plaintiff's counsel's legal work was excellent. . . . After a line-by-line review, Plaintiff made significant reductions based upon Defendants' objections. These deductions are thoughtful and well-reasoned, and appear to have been made in a good-faith effort to reach a fair resolution of the fee issue."); *Romeo v. Simm Assocs., Inc.*, 170 F. Supp. 3d 750, 754 (M.D. Pa. 2016)(Conaboy, J.)(the amount of time expended by Plaintiff's counsel's firm in generating their client's recovery and vindicating their right to the fees sought in this case is consistent with the cases Plaintiff's counsel has cited . . . , proportionate to the tenacity with which Defendant litigated this matter, and reasonable under the circumstances.") Thus, the result in *Badyrka* should not be fairly characterized as representing Plaintiff's counsel's general performance. *Badyrka* is of little relevance to this matter.

### 3. **Defendant's two specific objections.**

Given its duty to lodge specific objections, Defendant's brief should focus on identifying those objections that prevented the fee dispute from being resolved by negotiation. However, Defendant's brief mentions only two sets of entries about which it specifically complains.

The first is for "eighteen (18) separate entries related to communications to opposing counsel or [Plaintiff]." (Br. at p. 18.) However, these entries all appear on the A1 Bill. In other words, Defendant *has already agreed* that these particular entries are reasonable, provided that the Court decides that an award of fees is appropriate. (Doc. 117 ¶ 7). Additionally, these entries were generated over a 13-day period, thus averaging just over one communication a day. That volume of communication hardly seems unreasonable during a period where a settlement is being actively negotiated. Finally, in the exercise of billing judgment, counsel had already discounted four of those entries. No additional reduction is warranted.

The second set of entries that Defendant challenges is "98 entries for .1 hours [as of April 2, 2020] spent largely on e-mails and other communications (totaling $4,067.00)" (Br. at p. 18.) However, on the *disputed* portion of the bill, there are only three entries for .1 hours that were actually billed during this period. (Doc. 128-2 "A2 Bill.") The other nine entries were discounted. Thus, Defendant is really contesting only 18 minutes of time totaling $124.50.

Where are the rest of Defendant's specific objections? After the mediation failed and it became clear that the attorneys' fee issue would not settle, the parties

agreed to limit the scope (and attendant expense) of the fee application process by narrowing the issues that would need to be decided by the Court. To that end, Plaintiff's counsel provided his bill. Defendant responded with a detailed itemization identifying each time entry on the bill to which it objected, *along with the specific reason that it objected to each of those entries*. Plaintiff agreed to discount some of the entries to which Defendant had objected and identified those entries on the bill using red strike-through text. The entries on the bill that Defendant had not objected to were underlined in green. The remaining entries remained in plain text. That marked-up bill was attached to a filed stipulation which explained that the parties "have agreed to narrow the issues that would need to be decided by the Court."

Of course, Plaintiff's expectation here was that Defendant would raise with the Court the same specific objections that it had raised during negotiations. After all, that was the whole point of the agreement to narrow the issues.

As explained in Plaintiff's first brief, 84% of the dollar value of those objections related to either time spent briefing or to intra-office conferences. Plaintiff spent a substantial portion of the first brief tackling those issues. Defendant's reply brief does not disagree that the reason these time entries were relegated to the A2 Bill was because Defendant had raised those objections. Yet, Defendant does not reassert the objections here. Defendant should be considered to have forfeited those objections.

9

Again, Defendant has the duty to identify the entries to which it objects and the reasons therefor. Without notice of the objections, Plaintiff cannot respond, and the Court cannot know which of the "line, by line, by line" entries are at issue. But, other than the two sets of time entries identified at the beginning of this section, Defendant's brief does not identify any specific individual entry, or even an entire category of entries, to which it objects. Instead, the rest of Defendant's arguments apply universally to all time entries – whether on the agreed A1 Bill, or the disputed A2 Bill. None of those arguments are a reason to reduce the requested fee.

### 4. Proportionality is not a basis to reduce a fee.

Defendant cites to two cases from the Seventh Circuit to support a proportionality argument. The continuing validity of those opinions is questionable. Defendant quotes language from *In re Pine*, 705 F.2d 936, 939 (7th Cir. 1983) that the "amount of money at stake in a case is always *highly relevant* to the reasonableness of an attorney's fee request[.]" (Doc. 130, p. 14, emphasis and bracket added by Defendant.) Defendant also cites to *Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978) for the statement that 350 hours spent was "out of proportion" with the amount in controversy.

However, a few years after these cases were decided, the Supreme Court rejected the rule that fees be proportional to the underlying recovery. *See City of Riverside v. Rivera*, 477 U.S. 561, 580–81 (1986) (plurality op.). Of course, ruling that proportionality is not required is completely at odds with *Pine's* statement that

10

it is "always highly relevant." *Pine* and *Mirabel* are both out-of-circuit pre-*Riverside* cases that are of limited value today.

Fortunately, in the Third Circuit the rule is clear. In rejecting proportionality for an ERISA claim, the Circuit stated:

> [the defendant] offers no argument specific to ERISA's mandatory fee structure to ease our longstanding concerns with requiring proportionality. As we have previously explained with regard to another fee-shifting statute, [h]ad Congress believed ... that attorneys' fees should be awarded only in some proportion to the plaintiff's damages, it could have easily eliminated or modified the attorneys' fees provision. We will not impose such a change by judicial fiat.

*United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007)(quoting *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3d Cir. 1989))(internal quotation marks omitted.) The Third Circuit has also "rejected a rule of proportionality in civil rights cases," *Id.* at 293, citing *Cunningham v. City of McKeesport*, 807 F.2d 49 (3d Cir. 1986), and in RICO cases, *Id.* at 293, citing *McMonagle*.

The Third Circuit has not addressed proportionality under RESPA or TILA. However, since *Riverside*, the Third Circuit has not allowed proportionality for **any** fee shifting statute. There is no reason that a different treatment is warranted here. District courts within the Circuit have applied the analysis to other fee shifting statutes. *See Slantis v. Capozzi & Assocs., P.C.*, 2011 WL 2531752, at *5 (M.D. Pa. June 24, 2011)(Conner, J.)(Fair Credit Reporting Act); *A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, 2019 WL 2715681, at *9 (M.D. Pa. June 28, 2019)(Caputo, J.), *aff'd*, 839 F. App'x 665 (3d Cir. 2020)(Individuals with

Disabilities Education Act); *Shattuck v. Harmon Heating & Air Conditioning, LLC*, 2019 WL 3202507, at *4 (E.D. Pa. July 16, 2019)(Fair Labor Standards Act)

So what does the bar on proportionality mean? One way that the Third Circuit described it is as follows: "we embrace the broader proposition that the district court cannot adjust counsel fees to maintain a certain ratio between the fees and damages—to insure, for instance, that fees not exceed three times the amount of damages. *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996).

Elsewhere in its brief, Defendant argues for proportionality without explicitly describing the argument as such. Defendant claims that "[i]t is difficult to imagine any litigant affording the fees that Sabatini seeks to obtain the miniscule relief potentially available to Lewis at the time this action was commenced." (Doc. 130, p. 13). Of course, a comparison of fees to potential relief is a proportionality analysis. In *A.B. by & through F.B.* (cited above) Judge Caputo dispatched of such an argument:

> The District makes much out of that fact that it is inconceivable that plaintiff's counsel would submit a bill for such high fees to a parent and her son . . . . But that inconceivability is precisely why Congress includes fee-shifting provisions in the laws it enacts. The purpose of fee-shifting is to enable private parties to obtain legal help in seeking redress of injuries resulting from the actual or threatened violation of specific federal laws. That purpose is only satisfied if plaintiffs find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee." A "reasonable fee," therefore, does not mean a fee that an IDEA plaintiff would pay her lawyer if the IDEA's fee-shifting provision did not exist, as the

District argues. The whole point of fee-shifting is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery, thereby assuring that civil rights claims of modest cash value can attract competent counsel. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011).

*A.B. by & through F.B.,* 2019 WL 2715681, at \*9. (emphasis in original; internal brackets, quotation marks and citations omitted).

### 5. Plaintiff is contractually <u>and</u> statutorily entitled to attorneys' fees.

Defendant points out that Rule 68's cost-shifting mechanism is not a basis to award fees here, and that Plaintiff must therefore "establish an independent entitlement to attorney's fees. . . ." (Doc. 130 p. 6.) Plaintiff agrees. But that independent entitlement is easily established in a few different ways.

*a. Plaintiff is entitled to attorneys' fees as a matter of contract.*

"Rule 68 offers of judgment are governed by basic principles of contract law." *Machado v. L. Offs. of Jeffrey H. Ward*, 2016 WL 3574007, at \*1 (D.N.J. June 29, 2016); see also *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016), as revised (Feb. 9, 2016)(evaluating Rule 68 offer "[u]nder basic principles of contract law, . . .") The accepted Rule 68 offer here provides that Defendant will have a judgment entered against it for "$6,000, plus an additional amount for costs and reasonable attorneys' fees." Defendant agreed contractually to pay costs and fees.

*b. Any ambiguity is construed against Defendant.*

It would seem difficult for Defendant to make a good faith argument that the contractual language to pay fees is anything other than crystal clear. But, if Defendant does make that effort, it should remember that "under basic principles of

13

contract law," any ambiguity in the contract is construed against the drafter – here, Defendant. The Third Circuit has expressly applied this principle in the context of Rule 68, noting that "[a]mbiguities in Rule 68 offers are to be resolved against the offerors," *Lima v. Newark Police Dep't*, 658 F.3d 324, 330 (3d Cir. 2011)(quoting *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 391–93 (7th Cir. 1999)).

      *c. Plaintiff is entitled to attorneys' fees as a matter of statute.*

Defendant implies, without citation to any supporting authority,[8] that the judgment obtained by acceptance of a Rule 68 Offer does not constitute a finding that Defendant violated either statute or that Plaintiff has brought a successful action. Defendant then claims that, without a finding of a statutory violation, Plaintiff cannot recover attorneys' fees. (Doc. 130 p. 7)

The judgment against Defendant is "in satisfaction of all claims by Plaintiff." Plaintiff asserted claims under TILA and RESPA. The judgment is in satisfaction of those claims. Again, this interpretation seems clear, but to the extent that there is any ambiguity, it is construed against Defendant. As the holder of a $6,000

---

[8] The closest that Defendant comes to having authority is a case that Plaintiff had relied upon in his first brief: *In re Nosek*, 2006 WL 2700792 (Bankr. D. Mass. Sept. 19, 2006). That case does not mention Rule 68. When read in isolation, the language that Defendant quotes appears to support Defendant's position that there must be a finding that the party violated the statute: "absent damages caused by a RESPA violation, there is no 'successful action' under RESPA," (Doc. 130, p. 8). However, the actual facts of the case show that it does not help Defendant. The *Nosek* court did <u>not</u> find that there was no violation and then refuse to award statutory attorneys' fees. To the contrary, the court found a violation that merited only nominal damages of $1.00. Then the court awarded $45,000 in attorneys' fees. One thing that this case *is* useful for is as an example of an appropriate disproportionate fee. (See p. 10, supra.)

14

Case 5:19-ap-00116-MJC   Doc 131   Filed 01/23/23   Entered 01/23/23 22:45:48   Desc
Main Document      Page 19 of 24

judgment on the TILA and RESPA claims, Plaintiff has clearly prosecuted a "successful action" as that term is used in both TILA (15 U.S.C. § 1640(a)(3)) and RESPA (12 U.S.C. § 2605(f)(3)).

The Supreme Court has discussed how to demonstrate that a successful action has been brought for purposes of a fee award. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001).[9] One way to establish that status is to show a judicially sanctioned material alteration of the legal relationship between the parties. Acceptance of a Rule 68 offer satisfies that requirement. *See Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 102–03 (D. Mass. 2009)("Circuit court cases addressing Rule 68 judgments after *Buckhannon* uniformly find prevailing party status.")(citing *Grissom v. The Mills Corporation*, 549 F.3d 313, 316–319 (4th Cir. 2008) and *Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-op., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002)).

> d. *The fee is allowed because Plaintiff did not explicitly waive it.*

Waivers of statutory attorneys' fees must be explicit. *Lima v. Newark Police Dep't*, 658 F.3d 324, 332 (3d Cir. 2011). In *Lima*, the defendants tendered a Rule 68 offer to a civil rights plaintiff "to allow Judgment to be entered. . . in the amount of

---

[9] *Buckhannon* actually interprets the Civil Rights Act's fee shifting provision which uses the term "prevailing party," instead of "successful action." However, "use of the term 'successful action' appears to be synonymous with the term 'prevailing party.'" *Lucas v. Convergent Healthcare Recoveries, Inc.*, No. 3:12-CV-916, 2012 WL 6092734, at *3 (M.D. Pa. Dec. 7, 2012)(Kosik, J.)(FDCPA case)(citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); and *Buckhannon Bd. And Care Home, Inc. v. West Virginia Department of Health and Human Res.*, 532 U.S. 598, 602 (2001).

$55,000.00, including all of Plaintiff's claims for relief against all defendants." The offer was silent as to the treatment of the statutory attorneys' fees that were potentially available. The plaintiff accepted the offer and then sought attorneys' fees and costs. The defendant objected, stating that "the Defendants' Offer of Judgment was for 'all of Plaintiff's claims against all defendants.' There should be no confusion about any remaining claims, whether for costs or anything else; no such claims remain." The district court agreed and refused to allow attorneys' fees. The Third Circuit reversed. Citing to *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) for the proposition that fee waivers must be explicit, the Circuit held that where an "offer of judgment is silent as to fees and costs, they must be fixed by the court after the offer of judgment is accepted." *Lima,* 658 F.3d at 331. Of course, here the offer contains the opposite of a fee waiver. Instead, the offer expressly states that the judgment is to include "an additional amount for costs and reasonable attorneys' fees."

### 6. The degree of success is high.

Defendant characterizes the award of a statutory penalty as "miniscule" (Doc. 130, p. 13) and "minimal" (Doc. 130, p. 17). Plaintiff disagrees. To most consumers, $6,000 is very substantial. Defendant further argues that the fee should be reduced because the litigation was not very successful: "If the Court looks at what was actually obtained through litigation, the fee, if any, should be modest at best. Lewis obtained a judgment of $6,000, even though Lewis suffered no out of pocket loss." (Doc. 130, p. 20.)

16

Defendant does not attempt to rebut or distinguish the authority in Plaintiff's first brief regarding degree of success. (See Doc. 129, p. 4, citing *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) and *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995)). Nor does Defendant provide any authority of its own to support its position. However, if we compare Defendant's earlier characterizations of this case to the result actually obtained, we can see that Plaintiff has been *very* successful. After tendering the ultimately unaccepted $7,000 offer of judgment, Defendant explained the offer as follows:

> We see no way your client would be awarded the highest amount of the statutory penalty range (he has no actual damages) under both statutes. Thus, even if he was awarded $1,000 under each, which we believe is above what he'd actually get, the fees to your firm are $5,000.

(See annotations highlighted in green on portion of email string attached to Sabatini Affidavit as Exhibit 2.) What are the take aways from this statement? There are two. First, Defendant thought that the maximum statutory damages available to Plaintiff were only $2,000. At $6,000, Plaintiffs recovered triple what Defendant believed was theoretically possible. The second take away is that Defendant saw "no way" that Plaintiff would get even the $2,000 because the case was so weak. Viewed in that light, the result of $6,000 is even more extraordinary. Certainly, no reduction is warranted based on degree of success.[10]

---

[10] Arguably, achieving a result that Defendant implied was impossible *could* make this the "rare" or "exceptional" case that warrants a multiplier enhancement on the lodestar attorneys' fee. *See Burlington v. Dague,* 505 U.S. 557 (1992). Plaintiff is not requesting such a multiplier here.

## Conclusion

Defendant's brief began by stating that the Court's decision here could impact "general practice before this Court for years to come. . ." Plaintiff agrees. Consumer protection litigation is a difficult practice area for a plaintiff's lawyer. Fees are contingent and the lawyer does not receive any premium to compensate for that contingency. This treatment is different than in many other practice areas. For example, personal injury attorneys also work on a contingent basis. Like consumer protection plaintiffs' lawyers, when the personal injury attorney loses, she receives nothing. But, when she wins, the effective hourly rate that she recovers is likely substantially more than she would have charged if her client had been paying hourly, win-or-lose. The fee for the successful consumer protection plaintiff's attorney, however, is *capped* at the lodestar and is subject to reduction from there.

A court enjoys broad discretion in determining an appropriate fee. *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 476 (3d Cir. 1989). If the Court exercises that discretion here by applying a very austere approach to the calculation of the fee, then it **will be** likely that in "this Court for years to come," practitioners will be reluctant to represent consumers in fee-shifting litigation.

Plaintiff respectfully requests that the Court award the full amount itemized in the original application, plus an additional $13,570.45 for time spent preparing this brief, and plus such additional time as may be required to prepare for and attend the hearing.

18

## Certification of Page Count

The substantive portion of this brief contains 4,998 words.

s/ Carlo Sabatini_____
Carlo Sabatini, PA 83831
Attorney for Plaintiff
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Email carlo@bankruptcypa.com
